UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| VICTORIA A. SHAEV, | : | |
| | : | C.A. No. |
| Plaintiff, | : | |
| | : | |
| v. | : | **COMPLAINT** |
| | : | |
| NETSCOUT SYSTEMS, INC., ROBERT E. DONAHUE, JOHN R. EGAN, ALFRED GRASSO, JOSEPH G. HADZIMA, JR., SHANNON NASH, MARLENE PELAGE, CHRISTOPHER PERRETTA, VIVIAN VITALE, ANIL K. SINGHAL, and MICHAEL SZABADOS, | : | |
| | : | |
| Defendants. | : | |

Plaintiff, Victoria A. Shaev, alleges, upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys, except as to those allegations that pertain to the plaintiff herself, which are alleged upon knowledge, as follows:

**PRELIMINARY STATEMENT**

1. In 2006, in the wake of the Enron, WorldCom and Tyco options-related scandals, the Securities and Exchange Commission ("SEC") implemented a new set of rules dictating how companies must disclose executive and director compensation to their stockholders. Among these requirements, the SEC mandated that companies disclose the "grant date fair value" of stock awards and option awards in their proxy statements following the fiscal year in which such awards were granted. This requirement has been codified in Regulation S-K, 17 C.F.R. § 229 (Item 402 (c)(2)(v) and (vi)).

2. In doing so, the SEC affirmed that full disclosure of executive and director compensation decisions is important for investors to know at the time – or soon after – those

decisions are made.  Where that compensation is an unconditional cash award to an executive or director, the disclosure is transparent.  Where the compensation is, however, an award of options or a complex equity instrument that expires or vests years later, the value of the compensation award on the date of grant is somewhat opaque.  Providing the "grant date fair value" of such compensation in the proxy statement using approved accounting methods makes such compensation transparent to investors by assigning a dollar value to the awards.

3. But this rule mandating that companies provide the grant date fair value of equity-pay instruments is not as simple as disclosing the maximum possible award value.  Instead, to determine the fair value of such awards on the date of grant often requires the use of mathematical models.  Such models in turn require the implementation of assumptions concerning such awards.  Such assumptions can include, but are not limited to: expected volatility, interest rates, and expected dividend yields.

4. Company managers have discretion over the assumptions that are fed into the models.  Moreover, companies are incentivized to manipulate these assumptions to reduce the reported grant date fair value of equity awards.  Indeed, many studies have demonstrated the selective discounting of such awards, thereby making the compensation appear less than it truly is.  *See, e.g.*, Eli Bartov et al., Managerial Discretion and the Economic Determinants of the Disclosed Volatility Parameter for Valuing ESOs, 12 Rev. Acct. Stud. 155, 158 (2007) (finding in a sample of over 9000 firm-years from 1998 to 2004 that firms opportunistically selected volatility measures to reduce reported compensation); Preeti Choudhary, Evidence on Differences Between Recognition and Disclosure: A Comparison of Inputs to Estimate Fair Values of Employee Stock Options, 51 J. Acct. & Econ. 77, 91 (2011) (finding that opportunistic selection of volatility assumptions to minimize option value and compensation cost increased after stock option expensing was mandated in 2004); Leslie Davis Hodder et al., Employee Stock

Option Fair-Value Estimates: Do Managerial Discretion and Incentives Explain Accuracy?, 23 J. Contemp. Acct. Res. 933, 938-39 (2006) (finding use of discretion to reduce pro forma earnings among a subset of firms).

5. To police such manipulation, at the same time the SEC required the disclosure of the grant date fair values of such equity-based awards in 2006, the SEC also required that companies disclose the model and assumptions they use to calculate such values. This requirement is codified in Instruction 1 to Regulation S-K, 17 C.F.R. § 229 (Item 402 (c)(2)(v) and (vi)). Using these assumptions, it is possible for analysts (and shareholders) to re-run the calculation to confirm the disclosed grant date fair values.

6. Despite this SEC requirement, Defendant Netscout Systems, Inc. ("Netscout" or the "Company") does not disclose such information. *Since 2022, the Company has claimed to use a Monte Carlo simulation to calculate the millions of dollars in performance awards it awards its top executives, but it has withheld the assumptions it makes with regard to this model.*

7. Plaintiff brings this action to rectify this failure to provide essential information concerning the compensation granted to Netscout's most highly-compensated executives. Plaintiff also brings this action to determine whether Defendants have failed to accurately disclose the fair value of their compensation, which can only be done by knowing the assumptions Netscout makes to calculate the grant date fair values.

## JURISDICTION

8. The jurisdiction of this court is founded upon the application of questions of federal law pursuant to § 27 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

9. The claims herein arise under § 14(a) of the Exchange Act, 15 U.S.C. §78n(a) and Rule 14a-3, 17 C.F.R. § 240.14a-3, Rule 14a-9, 17 C.F.R. § 240.14a-9, Schedule 14A, 17 C.F.R. § 240.14a-101, and Regulation S-K, 17 C.F.R. § 229, of the United States Securities and Exchange Commission (the "SEC").

## THE PARTIES

10. Plaintiff Victoria A. Shaev is a stockholder of Defendant Netscout, and is entitled to vote on the proposals in the July 25, 2024 proxy statement furnished in advance of the September 12, 2024 annual stockholders meeting (the "2024 Proxy Statement").

11. Netscout is a Delaware corporation with its principal place of business in Westford, Massachusetts. Its stock is traded on the NASDAQ under the ticker NTCT. Netscout does business in New York and is registered with the Department of State Division of Corporations. It is a cybersecurity service provider. Its fiscal year ends on March 31, 2024.

12. Defendants Robert E. Donahue, John R. Egan, Alfred Grsso, Joseph G. Hadzima, Jr., Shannon Nash, Marlene Pelage, Christopher Perretta, Vivian Vitale, Anil K. Singhal, and Michael Szabados are all the members of the Netscout board of directors. Defendant Singhal is also Netscout's president and chief executive officer. Defendant Szabados is also Netscout's Chief Operating Officer.

## WRONGFUL ACTS AND OMISSIONS

13. The compensation of corporate directors and key officers is a matter of direct and deep concern to shareholders in the exercise of their right to vote. The SEC addresses this concern with detailed, explicit disclosure rules and regulations. This complaint challenges Netscout's proxy statements for omitting information specifically required by those rules and regulations and providing misinformation.

14. While, Netscout has failed to accurately and adequately disclose how it calculates the equity compensation awarded to its top executive officers since at least fiscal 2022, this Action is principally concerned with remedying the 2024 Proxy Statement.

15. In the 2024 Proxy Statement, the board of directors solicits the stockholders' proxies to vote in favor of the election of three of the Defendant directors named herein (namely, Defendants Grasso, Nash, and Vitale) ("Proposal No. 1"), in favor of adding 3,400,000 shares to the NetScout Systems, Inc. 2019 Equity Incentive Plan (the "2019 Plan" or "Proposal No. 2"), and in favor of Defendant Singhal and Szabados's fiscal 2024 compensation and that of the other named executive officers ("NEOs") on a non-binding, advisory basis under §14A of the Exchange Act, 15 U.S.C. §78n-1 (the "say-on-pay vote" or "Proposal No. 3").

16. Section 14(a) of the Exchange Act makes it unlawful for any person to solicit or to permit the use of his name to solicit any proxy in contravention of the SEC's rules and regulations.

17. SEC Rule 14a-9 forbids the solicitation of a proxy by means of a proxy statement containing materially false or misleading misrepresentations or omissions.

18. SEC Rule 14a-3(a) requires that public companies may not solicit stockholder votes without furnishing a proxy statement "containing the information specified in Schedule 14A." It is a violation of § 14(a) of the Exchange Act to misrepresent or to omit information specifically required by the SEC's rules and regulations.

19. Because the 2024 Proxy Statement solicits action to be taken at the meeting for the election of directors and in favor of the 2019 Plan in which directors and officers will participate, SEC Schedule 14A (Item 8(a) and (b)) requires the 2024 Proxy Statement to furnish the information required by SEC Reg. S-K (Item 402), concerning Director and Executive Compensation.

20. In addition, 15 U.S.C. §78n-1 requires proxy statements for which the SEC requires compensation disclosure to include a separate resolution for a stockholder vote on executive compensation as disclosed pursuant to SEC Reg. S-K (Item 402), i.e. the "say-on-pay vote."

21. SEC Schedule 14A (Item 8(a) and (b)) and Reg. S-K (Item 402(c)(1)) require such proxy statements to report the compensation of the NEOs for the company's last three completed fiscal years in the form of the Summary Compensation Table.

22. SEC Reg. S-K (Item 402(c)) requires strict compliance with the Summary Compensation Table so that it can accomplish its stated purpose of helping stockholders understand how compensation components relate to each other and use the Table to compare compensation from year to year and from company to company. SEC Release No. 8732A, *Executive Compensation and Related Person Disclosure*, 2006 WL 2589711 at *21 (Sept. 8, 2006). SEC Release No. 8732A at *24 and SEC Reg. S-K (Item 402 (c)(2)(v) and (vi)) both require stock awards to be reported in column (e) and option awards to be reported in column (f) of the Summary Compensation Table.

23. Instruction 1 to Item 402(c)(2)(v) and (vi) requires for awards reported in columns (e) and (f) the inclusion of a footnote disclosing all assumptions made in the valuation by reference to a discussion of those assumptions in the registrant's financial statements, or discussion in the Management's Discussion and Analysis. The sections so referenced are deemed part of the disclosure provided pursuant to this Item. FASB ASC Topic 718-10-50-2(f)(2) requires disclosure of those assumptions. FASB ASC Topic 718 means Financial Accounting Standards Board Accounting Standards Codification. Topic 718 covers the accounting and disclosure standards concerning stock and option compensation. The SEC requires entities under its jurisdiction to comply with FASB's standards and interpretations.

24.     The disclosure of Netscout's NEO compensation in the Summary Compensation Table in the 2024 Proxy Statement is in contravention of SEC Schedule 14A (Item 8(a) and (b)), SEC Reg. S-K (Items 402(c)(1) and 402(c)(2)(v) and (vi)) and Instruction 1 thereto, and SEC Release No. 8732A.

25.     The 2024 Proxy Statement represents that in fiscal year 2024, Netscout awarded its NEOs performance-based stock awards based in part on relative total shareholder return ("TSR") relative to the TSR of the Russell 2000 Index. The Summary Compensation Table reports that total equity based compensation for its top four executives was $4,727,748 for fiscal 2024, but it does not disaggregate equity compensation based on TSR from other equity compensation. It reports that total equity based compensation for its top four executives was $7,413,435 for fiscal 2023, but it does not disaggregate equity compensation based on TSR from other equity compensation. And it reports that total equity based compensation for its top four executives was $6,469,910 for fiscal 2022, but it does not disaggregate equity compensation based on TSR from other equity compensation.

26.     SEC Reg. S-K (Item 402(d)) also requires that proxy statements include a table of Grants of Plan-Based Awards. In the Grants of Plan-Based Awards for Fiscal 2024, Netscout clarifies that the grant date fair value of the TSR-based stock awards awarded to all four NEOs for fiscal 2024 was $1,456,752.

27.     Footnote 2 to the Summary Compensation Table says:

> The grant date fair value of all PSU awards was determined under FASB ASC Topic 718 using a Monte Carlo simulation model which simulates a range of possible future stock prices and estimates the probabilities of the potential payouts. In all cases, the amounts reflected above for PSU awards represent the maximum fair value of the performance-based portion of such awards as of the date of grant, assuming payout were to occur based on the achievement of maximum performance.

28. Footnote 4 of the Grants of Plan-Based Awards in Fiscal 2024 table says, "Amounts shown represent the aggregate full grant date fair value calculated in accordance with FASB ASC 718. See footnote (2) to the Summary Compensation Table for more information."

29. These statements from footnote 2 to the Summary Compensation Table and footnote 4 to the Grants of Plan-Based Awards for Fiscal 2024 Table are in contravention of the SEC regulations because they fail to provide the assumptions used to calculate the performance awards' grant date fair values. As a result, investors are left in the dark as to how Netscout determines the fair value of the compensation provided to the Company's most senior executives. These footnotes state that Netscout uses a Monte Carlo simulation to calculate the grant date fair values of the TSR based Performance Shares. Pursuant to FASB ASC Topic 718, the assumptions for a Monte Carlo simulation are (a) expected volatility, (b) dividend yield, (c) risk-free interest rate, and (d) expected life.[1] But none of these assumptions (or any others) are disclosed in the 2024 Proxy Statement or elsewhere.

30. Netscout's management selects and quantifies those assumptions. But (as discussed above in paragraph 4) authoritative surveys reveal that corporate management tends to select assumptions that reduce reported executive compensation. Disclosure of those assumptions is material because the technology is available to confirm the results and re-run the analysis with different assumptions. SEC rules and regulations and the accounting standard

---

[1] "A Monte Carlo simulation model projects future stock prices for the granting company and its peers based upon a risk-neutral stock price framework (similar to the financial modeling used for other employee equity such as BlackScholes or a binomial model). In fact, using identical assumptions, a Monte Carlo simulation would yield identical results to a Black-Scholes or binomial model. However, a Monte Carlo simulation allows for greater flexibility and customization of the assumptions and plan design parameters which is necessary to value a Relative TSR program."
https://www.radford.com/home/press_room/pdf/Radford_alert_RelativeTSR_09232009.pdf

require those quantitative disclosures.  FASB ASC Topic 718-10-50-2(f)(2).  Their omission contravenes the aforesaid SEC regulation, and the 2024 Proxy Statement violates §14(a) of the Exchange Act.

31. Because of these contraventions of the SEC rules and regulations, the 2024 Proxy Statement is in violation of §14(a) of the Exchange Act.  As a result, the Court should enjoin the election of the directors, the vote on the 2019 Plan, and the non-binding, advisory vote on the named executive officers' fiscal 2024 compensation.  In addition, to the extent discovery reveals that Defendants have understated the grant date fair value of executive compensation, the Court should reduce Defendants' compensation and impose damages.

32. Also, the Court should order corrective disclosures to Netscout's 2024 Proxy Statement.  That Proxy Statement must include a Summary Compensation Table disclosing the assumptions made to value the named-executive officers' 2022-2024 compensation and the method used to arrive at the grant date fair values of such compensation.

33. In addition, while it is perhaps only possible to remedy this problem going forward, it should be made clear the Netscout has never (or at least since fiscal 2022) adequately or accurately disclosed how it calculates its named executive officers' compensation.

## COUNT I
### (Exchange Act Violations in the Election of Directors Proposal)

34. Plaintiff incorporates all of the above paragraphs as if stated herein.  The above paragraphs state a direct claim for relief against the Company under Section 14(a) of the Exchange Act for acting in contravention of the "rules and regulations" prescribed by the SEC.

35. As a result of these actions, plaintiff will be injured, and she has no adequate remedy at law.  She will suffer irreparable harm in the form of an uninformed vote on the director Defendants on September 12, 2024 if no action is taken to ameliorate this harm.

36. To ameliorate the injury, injunctive relief is required in the form of an amended proxy statement that provides the information required by SEC Schedule 14A (Item 8(a)), SEC Reg. S-K (Items 402(c)(1) and 402(c)(2)(v) and (vi)) and Instruction 1 thereto, and SEC Release No. 8732A, and which explains what assumptions are used to determine the grant date fair value of the directors' compensation, if any.

37. Consequently, Netscout should be enjoined from presenting the director proposal for a stockholder vote at the September 12, 2024 annual meeting or certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any Netscout stockholder in connection with this proposal.

**COUNT II**
**(Exchange Act Violations in the Proposal to Approve the Amendment to the 2019 Plan)**

38. Plaintiff incorporates all of the above paragraphs as if stated herein. The above paragraphs state a direct claim for relief against the Company under Section 14(a) of the Exchange Act for acting in contravention of the "rules and regulations" prescribed by the SEC.

39. As a result of these actions, plaintiff will be injured, and she has no adequate remedy at law. She will suffer irreparable harm in the form of an uninformed vote on the 2019 Plan on September 12, 2024 if no action is taken to ameliorate this harm.

40. To ameliorate the injury, injunctive relief is required in the form of an amended proxy statement that provides the information required by SEC Schedule 14A (Item 8(b)), SEC Reg. S-K (Items 402(c)(1) and 402(c)(2)(v) and (vi)) and Instruction 1 thereto, and SEC Release No. 8732A.

41. Consequently, Netscout should be enjoined from presenting the 2019 Plan proposal for a stockholder vote at the September 12, 2024 annual meeting or certifying or

otherwise accepting any vote cast, by proxy or in person, by or on behalf of any Netscout stockholder in connection with this proposal.

## COUNT III
### (Exchange Act Violations in the Proposal to Approve the Compensation of Netscout's Named Executive Officers)

42. Plaintiff incorporates all of the above paragraphs as if stated herein. The above paragraphs state a direct claim for relief against the Company under Section 14(a) of the Exchange Act for acting in contravention of the "rules and regulations" prescribed by the SEC.

43. As a result of these actions, plaintiff will be injured, and she has no adequate remedy at law. She will suffer irreparable harm in the form of an uninformed "say-on-pay" vote on September 12, 2024 if no action is taken to ameliorate this harm.

44. To ameliorate the injury, injunctive relief is required in the form of an amended proxy statement that provides the information required by SEC Reg. S-K (Items 402(c)(1) and 402(c)(2)(v) and (vi)) and Instruction 1 thereto, and SEC Release No. 8732A.

45. Consequently, Netscout should be enjoined from presenting the "say-on-pay" proposal for a stockholder vote at the September 12, 2024 annual meeting or certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any Netscout stockholder in connection with this proposal.

## JURY DEMAND

46. Plaintiff demands trial by jury.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

A. Disclosure of the assumptions made in determining the grant date fair values of stock-based compensation of the NEOs in fiscal 2022-2024, in conformity with FASB ASC Topic 718 and SEC Reg. S-K.

B. Reduction of the Defendants' compensation to the extent understated in the Company's proxy statements;

C. Damages from the unlawful 2024 Proxy Statement;

D. An award of plaintiff's attorneys' fees to her counsel and expenses for accountants and other experts; and

E. Such other and further relief, whether similar or different, as is just or equitable.

Dated:  August 1, 2024    **BARRACK, RODOS & BACINE**

By: /s/ A. Arnold Gershon
A. Arnold Gershon
Michael A. Toomey
640 8th Avenue, 10th Floor
New York, NY 10036
Telephone: (212) 688-0782
Fax: (212) 688-0783
agershon@barrack.com
mtoomey@barrack.com

*Attorneys for Plaintiff*