UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICTORIA SHAEV,<br><br>         Plaintiff,<br><br>   -against-<br><br>NETSCOUT SYSTEMS, INC. et al,<br><br>         Defendants. | 24-cv-5859 (AS)<br><br>OPINION & ORDER |

ARUN SUBRAMANIAN, United States District Judge:

  Plaintiff Victoria Shaev seeks a preliminary injunction to prevent an upcoming stockholder vote at defendant NetScout Systems's annual meeting on September 12, 2024. Pl.'s Mem. Law at 5-7, Dkt. 21. Three proposals trouble Shaev: one involving the election of three new members of NetScout's board of directors, one concerning approval of executive compensation packages, and one altering the structure of NetScout's equity incentive program, for which directors are eligible. *Id.* at 1. Shaev argues that NetScout's proxy statement for the upcoming meeting is misleading with respect to these three proposals because it fails to include the assumptions underlying NetScout's calculation of the "grant date fair values" of performance stock units awarded to executives. Compl. ¶¶ 29, 32, Dkt. 1. As NetScout's proxy statement notes, it calculates the fair value of these stock awards using a Monte Carlo simulation model, which is a probabilistic method for projecting future stock prices. *Id.* ¶¶ 27, 29 n.1. What NetScout's statement leaves out are the assumptions it inputs into the simulation, which include expected volatility, dividend yield, risk-free interest rate, and expected life. *Id.* ¶ 29. Shaev says that the disclosure of these assumptions is required by "Regulation S-K," 17 C.F.R. § 229.402(c)(1)-(2), and that they must be provided for units granted over the last three fiscal years. Dkt. 21 at 1-4. For the following reasons, Shaev's motion is DENIED.

  At the outset, both parties agree that Shaev's claims with respect to Fiscal Year 2024 are moot. On August 15, 2024, NetScout filed a supplement to its proxy statement containing the assumptions underlying its calculations for 2024. Sloan Decl., Dkt. 32, Ex. B. These assumptions were precisely what Shaev said was missing. *See* Compl. ¶¶ 29, 32. So Shaev's Fiscal Year 2024 claims are no longer live. *See Taro Pharm. Indus., Ltd. v. Sun Pharm. Indus., Ltd.*, No. 09 CIV. 8262 (PGG), 2010 WL 2835548, at *10 (S.D.N.Y. July 13, 2010); *see also Lions Gate Ent. Corp. v. Icahn*, No. 10 CV 08169 HB, 2011 WL 1217245, at *1-2 (S.D.N.Y. Mar. 30, 2011).

  This leaves Shaev's claims as to Fiscal Years 2022 and 2023. On a motion for a preliminary injunction, the party seeking an injunction must demonstrate: "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018).

Shaev can't meet this standard. Most importantly, she hasn't shown a likelihood of success on the merits. Shaev's motion for a preliminary injunction is grounded in Section 14(a) of the Exchange Act and Rule 14a–9. (Shaev's complaint also raises Rule 14a-3 as a basis for relief, but that rule isn't invoked in her motion. *See* Dkt. 1 at 5; Dkt. 21 at 7-8.) To make out a Rule 14a-9 claim, a plaintiff must show that: "(1) a proxy statement contained a material misrepresentation or omission, which (2) caused plaintiffs' injury, and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Bond Opportunity Fund v. Unilab Corp.*, 87 F. App'x 772, 773 (2d Cir. 2004); *see also* 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a–9(a) ("No solicitation subject to this regulation shall be made by means of any proxy statement … containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading").

Shaev's claim falters at the start. She cannot show that the omission of the assumptions underlying the fair-value calculations for Fiscal Years 2022 and 2023 is material. To demonstrate that an omission is material, "the plaintiff must show that there was a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1198 (2d Cir. 1993) (internal quotation marks omitted); *see also Mendell v. Greenberg*, 927 F.2d 667, 673 (2d Cir. 1990), *amended*, 938 F.2d 1528 (2d Cir. 1991).

Shaev's main argument is that the omitted assumptions are per se material because SEC regulations require their disclosure. Dkt. 21 at 9. She grounds her per se rule in a snippet from the Second Circuit's decision in *Resnik v. Swartz*, 303 F.3d 147 (2d Cir. 2002), and a smattering of decisions by this Court and others, all of which lead back to *Resnik*. *See* Dkt. 21 at 8; Pl.'s Rep. Mem. Law at 3, Dkt. 36. But in *Resnik*, the Court held that Regulation S-K did not mandate the disclosure sought by the plaintiff, leaving unaddressed whether a failure to make a required disclosure was, by itself, a material omission. *See Resnik*, 303 F.3d at 151-52. While the court did say that "omission of information from a proxy statement will violate [Section 14(a) or Rule 14a-9] if *either* the SEC regulations specifically require disclosure of the omitted information in a proxy statement, *or* the omission makes other statements in the proxy statement materially false or misleading," *id.* at 151 (emphasis added), this was dicta, and unexplained dicta at that. The same issue plagues the other cases Shaev leans on. *See Bisel v. Acasti Pharma, Inc.*, No. 21 CIV. 6051 (KPF), 2022 WL 4538173, at *8 (S.D.N.Y. Sept. 28, 2022) (noting that the plaintiff had not alleged the omission of any required disclosure and discussing materiality on other grounds); *see also Seinfeld v. Becherer*, 461 F.3d 365, 371 (3d Cir. 2006); *Seinfeld v. Gray*, 404 F.3d 645, 650-51 (2d Cir. 2005).

Shaev has not cited any case holding that the failure to disclose information required by the SEC's regulations, no matter how trivial, is per se material. And NetScout cites cases pointing in the opposite direction. For instance, the Second Circuit has previously observed that an omission of information required by SEC regulations is, at best, strong evidence of materiality, but that the standard remains the same—"[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in making an investment decision." *United States v. Bilzerian*, 926 F.2d 1285, 1298 (2d Cir. 1991) (declining to find information required by

a regulation "material *per se*" for a Section 10(b) claim but noting that the regulation's requirement was "evidence of its materiality"). Shaev's per se rule also leads to some head-scratching outcomes. Consider a proxy statement that inadvertently omitted disclosure of the methodology by which an executive's compensation amount was converted from Qatari riyals to dollars. *See* 17 C.F.R. § 229.402(c) (requiring that a footnote describing the currency, rate, and conversion methodology used where an executive officer is paid in a different currency). Could a shareholder enjoin a vote days before the meeting based on this omission, even though the exchange rate between riyals and dollars has been fixed under Qatari law for the past two and half decades? The SEC's regulations require the disclosure of lots of information on a wide variety of things, many of which are undoubtedly material, but some of which may not be; a brief scan of the many disclosures required by Regulation S-K shows as much. *See, e.g.*, 17 C.F.R. § 229.402(c)(2)(i) (requiring disclosure of an executive's principal position, which is likely part of the public record). The potential mischief of Shaev's per se rule counsels against its adoption.

Using the materiality standard that has been in place for decades, Shaev has failed to show a likelihood of success. Nothing about the "total mix" of information is altered by the omission she's currently complaining about. *See United Paperworkers Int'l Union*, 985 F.2d at 1198. What's at stake in the upcoming vote is executive compensation for 2024. NetScout has already supplemented its proxy statement to disclose the 2024 assumptions, and Shaev hasn't argued that either the 2022 or 2023 assumptions are relevant to NetScout's calculation of executive compensation in 2024. And for its part, NetScout points to SEC staff guidance that says disclosure of all three years' assumptions is only required if it is "material to an investor's understanding of the compensation reported … for the company's last fiscal year." SEC Regulation S-K, Compliance and Disclosure Interpretations, Question 119.14, https://www.sec.gov/rules-regulations/staff-guidance/compliance-disclosure-interpretations/divisionscorpfinguidanceregs-kinterphtm. Of course, such guidance isn't binding on the Court's interpretation of the regulation, *see Buffalo Transp., Inc. v. United States*, 844 F.3d 381, 385 (2d Cir. 2016), but it is a helpful indicator that materiality isn't a given in this context. Shaev has done little to prove otherwise.

As a last-ditch attempt, Shaev argued in an email to the Court following the submission of her reply that the assumptions are generally required to allow comparison of executive compensation "from year to year and from company to company." *See* SEC Release No. 8732A, Exec. Comp. & Rel. Pers. Disclosure, 2006 WL 2589711 at *5 (Sept. 8, 2006). First, the Court need not consider arguments raised improperly and so late in the day. *See Goldberg v. UBS AG*, 690 F. Supp. 2d 92, 98 (E.D.N.Y. 2010); *United States v. Pascarella*, 84 F.3d 61, 73 (2d Cir. 1996). Second, even if the Court did, Shaev still falls short. Nowhere does she point to any specific comparison relevant to the upcoming vote that the 2022 or 2023 assumptions would inform. *See In re Bemis Co. Sec. Litig.*, 512 F. Supp. 3d 518, 539 (S.D.N.Y. 2021) (no materiality where plaintiff did not "give the reasons why [an omission was] misleading beyond the bare speculation that Defendants [relied on] 'self-serving estimates'"). And tellingly, after NetScout's supplemental disclosure, Shaev has been silent as to any discovered inaccuracies in NetScout's 2024 executive compensation disclosures.

Shaev does speculate as to why the fair value of the performance stock units is lower than the common stock price on the date of the grant. Dkt. 36 at 4-5. But NetScout explains that the fair value may be lower than the company's then-current stock price because NetScout caps the amount of stock an executive officer can receive at 100% of the target grant. Dkt. 31 at 10, 17; Sloan Decl.,

Dkt. 32, Ex. A at 44. Because the fair-value calculations factor in the possibility that executives may receive less than the full target grant, the fair value reported in the proxy statement can be lower than the common stock price, but not more. *See* Dkt. 31 at 10; Dkt. 32, Ex. A at 44, 53. Shaev doesn't dispute that the proxy statement disclosed that the target was the maximum (although she quibbles with where this disclosure was made), and she offers nothing to counter NetScout's explanation on the merits. Dkt. 36 at 4-5.

Nor does the omission of the 2022 and 2023 assumptions "make[] other statements in the proxy statement materially false or misleading." *In re Columbia Pipeline, Inc.*, 405 F. Supp. 3d 494, 506 (S.D.N.Y. 2019). Shaev does not direct the Court to any statements that are false or misleading in light of the omitted assumptions. *See Silberstein v. Aetna, Inc.*, No. 13-CV-8759 AJN, 2015 WL 1424058, at *15 (S.D.N.Y. Mar. 26, 2015) (no materiality where "[p]laintiff does not point to any representation in the proxy statement that is actually misleading because of [the omission]"). At best, Shaev seems to speculate that the assumptions are necessary for stockholders to determine whether possible malfeasance is afoot. Dkt. 21 at 6, 9. More is needed. The "absence of further details," without more, does not give rise to a claim under the securities laws. *In re Bemis*, 512 F. Supp. 3d at 539.[1]

Materiality is the plaintiff's burden to carry. *See ECA & Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009). Because Shaev hasn't come close to carrying that burden here, she can't show either "a likelihood of success on the merits" or even "serious questions" on that score. *See N. Am. Soccer League, LLC*, 883 F.3d at 37.

Putting merits questions to the side, Shaev also faces an uphill climb with other elements required for an injunction. For one, she hasn't made a convincing case of irreparable injury. Her main argument—that an uninformed vote is itself an irreversible harm—is one that federal courts have repeatedly rejected. *See Eisner v. Meta Platforms, Inc.,* No. 24-CV-2175-CRB, 2024 WL 3228089, at *6 (N.D. Cal. June 28, 2024) (citing cases); *Plant Indus., Inc. v. Bregman*, 490 F. Supp. 265, 271 (S.D.N.Y. 1980) ("To allow an election to proceed in the face of allegations of improper solicitations and misleading proxy materials does not in and of itself work an irreparable injury on the party challenging the materials."). "The Court possesses the power, if necessary, to void the election, order resolicitation and otherwise 'unscramble' this kind of transaction." *Id.*; *see also Johnson Fam. Tr. v. Saba Cap. Mgmt., L.P.*, No. 22 CIV. 4915 (AT), 2023 WL 1345717, at *4 (S.D.N.Y. Jan. 31, 2023) ("An uninformed vote does not itself amount to irreparable harm if the difficulties inherent in unwinding large corporate transactions are absent.") (internal quotation marks omitted). Nor is the timeline in Shaev's favor: NetScout sent out the proxy statement on July 25, 2024. Gershon Decl., Dkt. 22, Ex.1. Shaev filed her initial complaint on August 1, 2024. Dkt. 1. She then waited another two weeks to seek emergency relief. *See* Prop. Show Cause Order, Dkt. 20. If the injury posed is as certain and as permanent as Shaev claims, she should have moved for an injunction immediately. *See Cap. Real Est. Invs. Tax Exempt Fund Ltd. v. Schwartzberg*,

---

[1] NetScout also questions whether Regulation S-K actually requires disclosure of the assumptions for 2022 or 2023 in the first place. Dkt. 31 at 1. The parties have cited no cases addressing this issue, and the Court declines to wade into these waters given that lack of materiality here is so clear.

929 F. Supp. 105, 116 (S.D.N.Y. 1996). And the delay wasn't due to the need to assemble a robust evidentiary record in support of her motion. Her brief was 12 pages long and largely recycled what was in the complaint; there were no affidavits or other supporting materials providing other factual details in support of her application.

On similar grounds, the balance of the equities favors NetScout. NetScout has no doubt invested considerable energy and resources into preparing for and organizing this vote. By contrast, Shaev sat on her claim and failed to allege any specific harm (save for casting an uninformed vote) that she would suffer should the stockholder vote take place. *See Eisner*, 2024 WL 3228089, at *7.

Lastly, there is no reason why enjoining the vote would serve the public interest. Shaev's argument on this factor rests on the merits of her claim. Dkt. 21 at 12. As laid out above, the Court has its (substantial) doubts on that front.

For these reasons, Shaev's motion for a preliminary injunction is DENIED.

SO ORDERED.

Dated: September 11, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge